TEXAS & P. RY. CO. v. MILES et al.
(No. 1688.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 14, 1917. Rehearing Denied March 15, 1917.)

1. RAILROADS ⟸350(11) — OPERATION — CROSSING ACCIDENT — EVIDENCE — SUFFICIENCY.
Evidence *held* to warrant submission to jury of issue of negligence of railway employés in running at high speed without warning, proximately causing death of deceased at a crossing.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1164½.]

2. RAILROADS ⟸351(21) — CROSSING ACCIDENTS—INJURIES TO PERSONS—PROXIMATE CAUSE—"WITHOUT WHICH HE WOULD NOT HAVE BEEN INJURED."
In an instruction in action for death of a person injured in a railway crossing accident, the words "negligence without which he would not have been injured" mean negligence proximately causing the injury.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1213.]

3. RAILROADS ⟸350(13) — OPERATION — CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
Evidence *held* such that the court could not say as matter of law that deceased was negligent when struck by defendant's locomotive.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1166.]

4. RAILROADS ⟸350(33) — OPERATION — CROSSING ACCIDENTS—DISCOVERED PERIL—EVIDENCE.
Evidence *held* such that the court could not say as matter of law that issue of discovered peril of wagon driver approaching a railway

crossing was not in the case for damages for his death.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1191.]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by· Amanda Miles and another against the Texas & Pacific Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

See, also, 192 S. W. 1139.

An engine pulling only a caboose, specially running east, struck a wagon right on the crossing of the public road in the village of Greenwood, La., and as a result thereof Cicero Miles, who was driving the wagon, was killed. The injury occurred on August 1, 1913, at 5 o'clock p. m. The surviving wife and the minor children of Cicero Miles bring this suit for damages sustained by reason of his death. The negligence alleged in the petition is the failure of appellant's employés in charge of the train to keep a lookout for persons and vehicles likely to be at the crossing, and in not having the locomotive under proper control, and in approaching the crossing at a high rate of speed without ringing the bell or blowing the whistle as a warning of the engine's approach, and in the failure of the employés, after discovering the perilous situation of the deceased, to use the means they should have used to avoid injuring Cicero Miles. The defense relied upon was contributory negligence on the part of the deceased and the use of all means and effort to stop the engine before striking the wagon as soon as the approach of the wagon was observed. The verdict of the jury was in favor of appellees.

At the point of injury the appellant's track runs east and west, and is in a cut the north bank of which is 10 or 12 feet high. The depot building is on the south side of the track and between 12 and 20 yards west of the wagon road in question. Just west of the depot building on the south side of the track are two section houses. A public road approaches the railroad from the northwest and reaches to within 100 feet of the railroad track at a point beginning about 300 yards west of the depot. The public road then proceeds eastward parallel to the railroad track and about 100 feet north of the track and on top of the north bank of the cut. When the public road gets about even with the depot, it curves to the southeast, comes down the bluff of the cut, with a considerable incline, to the ground nearly on a level with the railroad, then turns south for about 50 feet, crossing the railroad at right angles and continuing on south. Cicero Miles was driving the wagon, which was drawn by two horses; and in the wagon were, also, Emma Glover, a boy, and another person. The wagon was proceeding east and south across the track. The evidence on the

part of the plaintiff shows that the engine was running from 30 to 35 miles an hour, did not stop at the station, was making very little noise, and did not ring the bell nor blow the whistle as it approached the crossing. The witnesses for defendant testified that the engine was running from 15 to 20 miles an hour, and that the whistle was sounded as it approached the station and the crossing. It was shown that a wagon could be seen on the road at any time after the engine reached a point about 300 yards west of the crossing, and that an engine could be seen from the wagon road about 200 yards or more from the crossing. The engineer was on the right-hand side of the engine, and says that the boiler head prevented him from seeing the approach of the wagon from the north, and that he did not see it until the heads of the team came from behind the boiler, when the engine was right at them. The fireman saw the wagon and tried to warn the engineer of the fact of its approach, but he says the engineer did not seem to hear. The brakeman in the caboose also saw the wagon while it was on the road and approaching the crossing. The fireman testified that when he first saw the wagon he hardly knew how far the engine was from it, but judged it was something like 75 yards, and he motioned towards the wagon to stop and tried to get the engineer's attention. At this time the engineer put on more steam and increased somewhat the speed of the engine. The horses then turned down the hill, which was a considerable grade, and began to trot, and then the driver began slapping them with the lines to get them across the track. After the engine struck the wagon, it was stopped in some six or eight car lengths' distance. The speed of the engine could have been slackened before striking the wagon, at the time the fireman first saw the wagon on the hill.

There is evidence tending to support the conclusions reached by the jury in their verdict, and, in deference to the verdict, their findings of fact are sustained.

F. H. Prendergast, of Marshall, for appellant. Cary M. Abney and M. M. O'Banion, both of Marshall, for appellees.

LEVY, J. (after stating the facts as above). A paragraph of the court's charge reads as follows:

"Now, if you find from the evidence that the defendant's locomotive approached the crossing where the accident occurred at a high rate of speed, and that the employés of the defendant in charge of said locomotive approached the crossing without ringing the bell or sounding the whistle, or that the said employés of the defendant did not exercise ordinary care to discover the wagon in which the deceased was traveling, and you further find that such acts or omissions on the part of the defendant's employés, if any, constitute negligence on the part of the defendant's servants and employés, and you further find that such negligence, if any, was the proximate cause of the death of Cicero Miles, then you will find for plaintiff, unless you find that the said Cicero Miles himself was guilty of negligence which caused or contributed to cause his death."

[1] The court did not err, it is thought, in authorizing the jury in this case to determine, as the charge did, whether or not the persons operating the engine were guilty of negligence proximately causing the death of Miles on account of the speed at which the engine was going when it struck the wagon, together with the failure to blow the whistle or ring the bell on approaching the crossing. Therefore assignments of error Nos. 1 and 6 are overruled.

[2] "Negligence without which he would not have been injured," as used in the fourteenth section of the court's charge, means negligence proximately causing the injury. And the effect of the instruction is that the negligence of the deceased must proximately contribute to bring about the injury, as distinguished from a remote cause. The second assignment of error is overruled.

[3, 4] It is thought that in the circumstances of the case the court may not say as a matter of law that Cicero Miles was guilty of contributory negligence, or that the issue of discovered peril was not in the case. Railway Co. v. Tinon, 117 S. W. 936. And the several assignments raising these questions are overruled.

It is concluded that the verdict is not excessive, and that the eighteenth assignment of error should be overruled.

The remaining assignments of error do not present, it is thought, any reversible error, and they are overruled.

Judgment affirmed.